# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **MARC A. DONALD,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:04cv00090 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of Social Security, | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Marc A. Donald, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance."

-1-

*Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Donald protectively filed his application for DIB on or about November 18, 2002, alleging disability as of March 22, 2002, based on post-traumatic stress disorder, ("PTSD"), anxiety, stress, paranoia, separation anxiety, depression, rage and panic attacks. (Record, ("R."), at 62-65, 78.) The claim was denied initially and upon reconsideration. (R. at 27-29, 32, 34-36.) Donald then requested a hearing before an administrative law judge, ("ALJ"). (R. at 37.) The ALJ held a hearing on May 5, 2004, at which Donald was represented.[1] (R. at 187-206.)

By decision dated June 15, 2004, the ALJ denied Donald's claim. (R. at 13-23.) The ALJ found that Donald met the disability insured status requirements of the Act for disability purposes through the date of the decision. (R. at 22.) The ALJ found that Donald had not engaged in substantial gainful activity since March 22, 2002. (R. at 22.) The ALJ also found that the medical evidence established that Donald suffered from severe impairments, namely an anxiety disorder, but he found that Donald did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.) The ALJ found that Donald's allegations were not totally credible. (R. at 22.) The ALJ found that Donald retained the residual functional capacity to perform work at all exertional levels that accommodated working alone, possibly at night or outdoors, with little

---

[1]Donald was represented by a nonattorney representative, Bonnie Donahue. (R. at 187, 190.)

contact with any co-workers or members of the public. (R. at 22.) Thus, the ALJ found that Donald could not perform any of his past relevant work. (R. at 22.) Based on Donald's age, education and work history and the testimony of a vocational expert, the ALJ concluded that Donald could perform jobs existing in significant numbers in the national economy, including those of a janitor and a night security guard. (R. at 22.) Thus, the ALJ found that Donald was not disabled under the Act and was not eligible for DIB benefits. (R. at 22-23.) *See* 20 C.F.R. § 404.1520(g) (2005).

After the ALJ issued his decision, Donald pursued his administrative appeals, (R. at 9), but the Appeals Council denied his request for review. (R. at 5-8.) Donald then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2005). The case is before this court on Donald's motion for summary judgment filed September 12, 2005, and the Commissioner's motion for summary judgment filed April 13, 2005.

## *II. Facts*

Donald was born in 1974, (R. at 62), which classifies him as a "younger person" under 20 C.F.R. § 404.1563(c). Donald obtained his general equivalency development, ("GED"), diploma. (R. at 84, 192.) He testified that he worked for the Virginia Department of Transportation processing orders and invoices. (R. at 192.) Donald testified that when he worked, he became nervous about where his family was and would have to talk to them. (R. at 195.) He stated that he still experienced these feelings while at home when his family was not at home. (R. at 195.) Donald stated that he was up all during the night checking to make sure his doors were locked. (R. at 195.)

Earl Glosser, a vocational expert, also was present and testified at Donald's hearing. (R. at 200-04.) Glosser was asked to assume a hypothetical individual of Donald's age, education and work history, who would have to work by himself, possibly at night or outdoors. (R. at 201-02.) Glosser testified that such an individual could perform the jobs of a janitor and a night guard, jobs that existed in significant numbers in the national economy. (R. at 202.)

In rendering his decision, the ALJ reviewed records from Dr. Stephen A. Reiter, M.D., a psychiatrist; Marcia M. Grenell, Ph.D., a state agency psychologist; Mary Eileen Cronin, Ph.D., a state agency psychologist; Katherine A. Zinn, a licensed clinical social worker; and David Leen, Ph.D., a licensed clinical psychologist.

In April 2002, Donald reported to his therapist, Katherine A. Zinn, a licensed clinical social worker, that he self-medicated with alcohol and marijuana. (R. at 141.) He reported that he believed that he had a problem with alcohol and drugs and that he had not experienced sobriety in a number of years. (R. at 144.) Donald reported that his mother emotionally abused him when he was a child. (R. at 145.) Zinn diagnosed PTSD, cannabis dependence, alcohol abuse and personality disorder, not otherwise specified. (R. at 147.) She assessed Donald's then-currentGlobal Assessment of Functioning, ("GAF"), score at 45.[2] (R. at 147.)

---

[2]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

Progress notes from April through September 2002, indicate that Dr. Stephen A. Reiter, M.D., a psychiatrist, noted that Donald was stable as long as he was able to avoid his work area and areas where there were many people. (R. at 116-18.) He reported that Donald had significant to moderate PTSD symptoms, that his medications were helpful, but that he could not return to work at that time. (R. at 116-18.) In June 2002, Dr. Reiter also indicated that Donald experienced severe anxiety when he approached his former workplace and experienced difficulty thinking and tearfulness when exposed to suggestions of his former workplace. (R. at 131.) In insurance physician statements from July through October 2002, Dr. Reiter indicated that Donald was diagnosed with PTSD and was disabled indefinitely from all occupations. (R. at 122, 124, 126, 129.) On June 3, 2003, Dr. Reiter completed a mental status evaluation form, indicating that he treated Donald on a quarterly basis from April 2002 through April 2003. (R. at 110-14.) However, he indicated that during this time he had not performed any psychological testing on Donald. (R. at 113.) Dr. Reiter reported that Donald was oriented in all spheres, that his mood, affect and emotional lability were sad and tearful at times, that his memory was impaired when anxious and that his thought content and organization was logical and linear, but obsessive, which could impair his thinking clearly. (R. at 112.) Dr. Reiter reported that Donald's attention span, persistence, task completion and judgment were impaired and that he became agitated, panicky, irritable and angry under even minor stress. (R. at 113.) Dr. Reiter diagnosed PTSD, alcohol abuse and cannabis dependence. (R. at 110.)

On August 27, 2003, Dr. Reiter completed a mental assessment, indicating that Donald was seriously limited, but not precluded, in his ability to follow work rules, to relate to co-workers, to use judgment, to function independently, to maintain

attention/concentration and to maintain personal appearance. (R. at 183-84.) He indicated that Donald had no useful ability to deal with the public, to interact with supervisors, to deal with work stresses, to deal with changes in a routine work setting, to understand, remember and carry out complex, detailed or simple instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 183-84.)

On October 22, 2003, Dr. Reiter completed an anxiety-related disorder assessment. (R. at 180-82.) He indicated that Donald was diagnosed with PTSD, which resulted in marked restrictions on his activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 180-81.) Dr. Reiter also indicated that Donald had experienced one or two episodes of decompensation. (R. at 181.) He reported that Donald had a complete inability to function independently outside the area of his home and that his symptoms would interfere with the ability to maintain reliable attendance in a work setting. (R. at 182.)

On March 3, 2003, Marcia M. Grenell, Ph.D., a state agency psychologist, indicated that Donald suffered from an anxiety-related disorder and that a residual functional capacity assessment was necessary. (R. at 154-67.) Grenell indicated that Donald was only mildly limited in his activities of daily living. (R. at 164.) She found that Donald was moderately limited in his ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 164.) Grenell found that Donald had experienced no episodes of decompensation. (R. at 164.) This assessment was affirmed by Mary Eileen Cronin, Ph.D., another state agency psychologist, on June 12, 2003. (R. at 154.)

Grenell also completed a mental assessment, indicating that Donald was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention/concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the public, to accept instructions and respond appropriately to criticism from supervisors and to get along with co-workers or peers without distracting them. (R. at 168-70.) However, Grenell opined that Donald could perform simple, routine work in a nonstressful environment. (R. at 170.) She also indicated that Donald's social and adaptive functioning was adequate for routine work. (R. at 170.)

On March 2, 2004, David Leen, Ph.D., a licensed clinical psychologist, evaluated Donald. (R. at 171-75.) Donald denied alcohol abuse for the previous two years. (R. at 172.) Leen reported that Donald was able to concentrate and persist adequately. (R. at 173.) He reported that Donald related in a depressed, anxious and apprehensive manner. (R. at 173.) Leen diagnosed chronic PTSD, depressive disorder, not otherwise specified, and panic disorder without agoraphobia. (R. at 174.) Leen assessed Donald's then-current GAF score at 53.[3] (R. at 174.) Leen reported that Donald would be unable to perform simple, repetitive work activities on a full-time basis and would require a high level of structure and support in order to perform simple, repetitive work activities on a part-time basis. (R. at 174-75.) He further indicated that Donald's abilities for dealing appropriately and effectively with co-

---

[3]A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

workers, supervisors and the public were significantly, but not profoundly, impaired due to his daily panic episodes, interpersonal apprehensiveness and withdrawal, psychomotor slowing, dysphoria and his limitations in stress tolerance. (R. at 175.) He also reported that Donald appeared significantly limited in his reserve stress tolerance and would find the usual stresses of competitive work intermittently overwhelming even on a part-time basis. (R. at 175.)

Leen also completed a mental assessment, indicating that Donald was not limited in his ability to understand, remember and carry out short, simple instructions. (R. at 176-77.) He indicated that Donald was only mildly limited in his ability to make judgments on simple work-related decisions. (R. at 176.) Leen indicated that Donald was moderately limited in his ability to understand, remember and carry out detailed instructions. (R. at 176.) He also indicated that Donald was seriously limited, but not precluded, in his ability to interact appropriately with the public, with supervisors and with co-workers, to respond appropriately to work pressures in a usual work setting and to respond appropriately to changes in a routine work setting. (R. at 177.) Leen noted that this assessment was based on Donald's reports of daily panic episodes, interpersonal apprehensiveness and social withdrawal, as well as clinically apparent psychomotor slowing, depressed and irritable moods and very limited stress tolerance. (R. at 177.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20

C.F.R. § 404.1520 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2005).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2) (West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated June 15, 2004, the ALJ denied Donald's claim. (R. at 13-23.) The ALJ found that the medical evidence established that Donald suffered from severe impairments, namely an anxiety disorder, but he found that Donald did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.) The ALJ found that Donald's allegations were not totally credible. (R. at 22.) The ALJ found that Donald retained the residual functional capacity to perform work at all exertional levels that

accommodated working alone, possibly at night or outdoors, with little contact with any co-workers or members of the public. (R. at 22.) Thus, the ALJ found that Donald could not perform any of his past relevant work. (R. at 22.) Based on Donald's age, education and work history and the testimony of a vocational expert, the ALJ concluded that Donald could perform jobs existing in significant numbers in the national economy, including those of a janitor and a night security guard. (R. at 22.) Thus, the ALJ found that Donald was not disabled under the Act and was not eligible for DIB benefits. (R. at 22-23.) *See* 20 C.F.R. § 404.1520(g) (2005).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently

-10-

explains his rationale and if the record supports his findings.

Donald argues that the ALJ erred by failing to find that his mental impairment met or equaled the medical listing for anxiety-related disorders, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06. (Plaintiff's Motion For Summary Judgment Appealing The Decision Of The Commissioner Of Social Security And Certificate Of Service, ("Plaintiff's Brief"), at 9-15.) Donald also argues that the ALJ erred by rejecting the opinions of Dr. Reiter, his treating physician, and psychologist Leen. (Plaintiff's Brief at 11-15.) Donald next argues that the ALJ erred in his credibility determination in making his residual functional capacity finding. (Plaintiff's Brief at 15-17.) Finally, Donald argues that the ALJ erred by presenting an incomplete hypothetical to the vocational expert. (Plaintiff's Brief at 18-19.)

Donald argues that the ALJ erred by failing to find that he met or equaled § 12.06. (Plaintiff's Brief at 9-15.) To meet or equal the listed impairment for anxiety-related disorders found at § 12.06, a claimant must show by medically documented findings that he suffers from at least one of the following:

> 1. Generalized persistent anxiety accompanied by three of the following: motor tension, autonomic hyperactivity, apprehensive expectation or vigilance and scanning;
> 2. A persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity or situation;
> 3. Recurrent severe panic attacks manifested by a sudden

-11-

> unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week;
>
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
>
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(A) (2005). A claimant also must show that his condition results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(B) (2005). If a claimant cannot show that his condition resulted in two of the previous problems, he may still qualify for benefits under this section if he can show that his symptoms have resulted in a complete inability to function independently outside the area of his home. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(C) (2005).

Donald argues that Dr. Reiter, in his October 22, 2003, anxiety-related disorder assessment, found all of the necessary criteria for his impairment to meet the criteria of § 12.06. This is true. However, the ALJ accorded only slight weight to the findings of Dr. Reiter and psychologist Leen. Thus, the issue is whether substantial evidence supports the ALJ's weighing of the medical evidence. For the following reasons, I find that it does.

-12-

In rejecting Dr. Reiter's findings that Donald's condition met the listed impairment for anxiety disorder, the ALJ stated that he was doing so because the finding was inconsistent with Dr. Reiter's own treatment notes and those of Zinn, Donald's treating therapist. (R. at 19.) The record supports this finding. Thus, the ALJ's weighing of the medical evidence on this issue was appropriate. Furthermore, the ALJ's finding on this issue is supported by the PRTF completed by state agency psychologists Grenell and Cronin. I do not, however, find that substantial evidence supports the ALJ's finding as to Donald's mental residual functional capacity. After rejecting the opinions of Dr. Reiter and psychologist Leen, the only remaining evidence relating to Donald's mental impairment contained in the record is that of state agency psychologists Grenell and Cronin. The Mental Residual Functional Capacity Assessment completed by Grenell, and affirmed by Cronin, does not support the ALJ's findings. In particular, this assessment found that Donald's work-related mental abilities were moderately limited in a number of areas. (R. at 168-70.) Because the only remaining psychological evidence does not support the ALJ's finding, I find that the ALJ improperly substituted his opinion for that of a mental health professional. *See Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988); *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984).

For these reasons, I find that substantial evidence does not support the ALJ's finding as to Donald's mental residual functional capacity. Thus, I find it unnecessary to address Donald's remaining arguments.

**PROPOSED FINDINGS OF FACT**

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence supports the ALJ's failure to find that Donald's mental impairment met or equaled the criteria for anxiety-related disorders, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06;

2. Substantial evidence supports the ALJ's weighing of the medical evidence with regard to Donald's mental impairments;

3. Substantial evidence does not support the ALJ's finding as to Donald's mental residual functional capacity; and

4. Substantial evidence does not support the ALJ's finding that Donald was not disabled under the Act and was not entitled to benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Donald's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand the case to the Commissioner for further consideration of Donald's mental impairment and its effect on Donald's work-related abilities.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp. 2005):

Within ten days after being served with a copy [of this

Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Norman K. Moon, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 28th day of September 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE